# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

VERNON NELSON,

    Plaintiff

v.

R. TRUESDELL,

    Defendant

Case No.: 3:20-cv-00436-MMD-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 53, 57

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for summary judgment. (ECF Nos. 52, 53, 54.) Defendant Truesdell filed a response. (ECF No. 62.) Plaintiff filed a reply. (ECF No. 64.)

Truesdell has also filed a motion for summary judgment. (ECF Nos. 57, 57-1 to 57-18.) Plaintiff filed a response. (ECF No. 65.) Truesdell filed a reply. (ECF No. 66.)

After a thorough review, it is recommended that Plaintiff's motion be denied, and that Truesdell's motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Plaintiff is proceeding on his second amended complaint (SAC) with claims for sexual abuse under the Eighth Amendment and retaliation under the First Amendment. (*See* ECF Nos. 14, 15.) Plaintiff alleges that on July 17, 2019, Truesdell inappropriately grabbed his penis during a pat-

1  down search outside of the dining hall. Then, Truesdell wrote Plaintiff up for false charges,

2  asserting that Plaintiff took an orange from the dining hall. In addition, Truesdell engaged in a

3  pattern of harassment and stalking. Plaintiff claims Truesdell did this in retaliation for Plaintiff's

4  complaint against him for sexual assault.

5      Both parties argue they are entitled to summary judgment.

6                          **II. LEGAL STANDARD**

7      The legal standard governing this motion is well settled: a party is entitled to summary

8  judgment when "the movant shows that there is no genuine issue as to any material fact and the

9  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

10 *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

11 evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

12 *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

13 of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary

14 judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

15 other hand, where reasonable minds could differ on the material facts at issue, summary

16 judgment is not appropriate. *Anderson*, 477 U.S. at 250.

17     "The purpose of summary judgment is to avoid unnecessary trials when there is no

18 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

19 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

20 of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

21 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

22 one party must prevail as a matter of law"). In considering a motion for summary judgment, all

23 reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

*Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Exhaustion

First, the court will address Truesdell's argument that Plaintiff did not exhaust administrative remedies with respect to Plaintiff's claim that Truesdell retaliated against him by engaging in a campaign of stalking and harassment because Plaintiff complained about Truesdell.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative

remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)).

Administrative Regulation (AR) 740 contains NDOC's grievance process, and an inmate must comply with its procedures to exhaust administrative remedies. An inmate within NDOC must complete three levels to exhaust administrative remedies: informal, first, and second levels. (ECF No. 57-15.)

Plaintiff filed grievance 2006-30-86717 on July 17, 2019, reporting the alleged sexual abuse by Truesdell. (ECF No. 57-10 at 26-28, 31-32; ECF No. 52 at 46-54.)

Plaintiff filed grievance 2006-30-87200 on July 21, 2019, asserting that after the alleged sexual abuse incident, Plaintiff went to find out the officer's name who committed the abuse, and asked the officer whom he claims committed the abuse, who wrote down the name "Truesdell" on a piece of paper and handed it to Plaintiff. Plaintiff claimed that as a result of this event, Truesdell knew Plaintiff was going to file a complaint against him.  Plaintiff alleges Truesdell retaliated against him by writing him up with a false notice of charges. (ECF Nos. 57-10 at 12-19, 21; ECF No. 52 at 33-44.)

There is no grievance asserting that Truesdell then engaged in a campaign of stalking and harassment against Plaintiff in retaliation for complaining about Truesdell. Therefore, the burden shifts to Plaintiff to demonstrate administrative procedures were unavailable to him.

Plaintiff provides a general argument that this was the case, but this is insufficient to meet his burden. *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). Plaintiff points to the fact that some grievance responses were

untimely, but this does not make remedies unavailable as AR 740 specifically provides that an inmate may move on to the next level if this occurs.

Plaintiff also argues that it is Truesdell's burden to demonstrate administrative remedies were available, but under the authority cited above, this burden falls on Plaintiff, and he has not provided any evidence to satisfy his burden.

Therefore, Truesdell's motion should be granted with respect to the retaliation claim based on the allegation that Truesdell engaged in a campaign of harassment and stalking.

**B. Facts**

According to Plaintiff, on July 17, 2019, he exited the LCC dining hall to go back to his housing unit when an officer later identified as Truesdell gave him an order to submit to a pat-down search. Plaintiff complied by facing the wall. Plaintiff claims that while Truesdell initially used the flat palms of his hands to pat Plaintiff down, he then grabbed, fondled, and squeezed Plaintiff's penis very hard, in a sexual manner. Plaintiff instinctively slapped Truesdell's hand off of his penis, and Plaintiff asked him what he was doing. Plaintiff claims that Truesdell gave him a "lascivious" look, smirked, and in a sarcastic manner said, "I am sorry."

Plaintiff claims he returned to his housing unit and immediately notified Senior Correctional Harlow of the incident, and asked what the officer's name was. Harlow stated he did not know, but granted Plaintiff permission (along with his cellmate Jonathan Cowart) to return to the dining hall to obtain the officer's name. When he returned to the dining hall, there were three officers standing outside: Malay, Bennett, and one other, who was the officer that committed the assault. Neither Malay nor Bennett would give him the other officer's name, and so Plaintiff called for the other officer and asked him for his name, and he responded, "Truesdell," and wrote his name down on a sticky piece of paper and handed it to Plaintiff.

Plaintiff then returned to the housing unit and reported the sexual assault through the prison grievance process (grievance 2006-30-86717), through the institutional Prison Rape Elimination Act (PREA) hotline, to the Las Vegas Rape Crisis Center, and by giving a statement to his caseworker, Ms. Ballinger. Ms. Ballinger told him to report to operations to see Lieutenant Harveston. Plaintiff did so and gave a statement to Harveston. Harveston advised him, "just so you know, you're receiving a write up for the orange you took out of the kitchen." Plaintiff told Harveston he did not take an orange, and that the video footage would confirm this. He also said this was retaliation by Truesdell for reporting him. On July 18, 2019, Ballinger told Plaintiff the Inspector General's (IG) Office received his informal grievance under PREA and an investigation had been initiated.

Plaintiff received a Notice of Charges (NOC) by Truesdell for "failure to follow rules and regulations" related to the assertion that Plaintiff took an orange from the dining hall.

Plaintiff then filed a grievance about Truesdell retaliating against him (grievance 2006-30-87200).

Plaintiff's disciplinary hearing was held on August 19, 2019. Plaintiff gave his statement that Truesdell had falsified charges against him in retaliation for his PREA complaint, and Plaintiff asked for a review of the video evidence. The hearing officer reviewed the video footage and determined that no orange or anything else was found on Plaintiff's person, and the charge was dismissed. At the hearing, Caseworker Ball also viewed the video, and Plaintiff claims she said, "Mr. Nelson, I want you to know I cringed when I saw what Officer Truesdell did to you." (Pl. Decl., ECF No. 52 at 4-16.)

The Investigation Detail Report from the alleged abuse incident noted Plaintiff's allegation that the officer conducting a pat-down search outside the culinary grabbed and

squeezed Plaintiff's genitals. It was noted that Plaintiff had received the NOC for attempting to take oranges out of the culinary. The report found that Truesdell was within the scope of and duty of his job performance in conducting a thorough pat down search. (ECF No. 54 at 3-6.)

Plaintiff reported the alleged sexual assault by Truesdell at a medical appointment on July 24, 2019. He also reported that Truesdell had retaliated against him with the NOC after Plaintiff asked for his name because Truesdell realized Plaintiff was going to file a complaint. (ECF no. 54 at 8.)

Plaintiff also provides an email from Leslie Rush, a PREA coordinator, that confirms she was contacted by Plaintiff about the incident with Truesdell. (ECF No. 52 at 71.)

Plaintiff submits an affidavit from his cellmate, Jonathan Cowart, who confirms that Plaintiff came back from breakfast on July 17, 2019, and told him he was sexually assaulted. Cowart went with Plaintiff to get the officer's name and substantiates Plaintiff's version of events regarding finding out Truesdell's name. (ECF No. 52 at 65-66.)

Finally, Plaintiff submits an affidavit from inmate Ryan Cowles, who was working as a porter in the dining hall on July 17, 2019, and was also subject to a pat-down search by Truesdell when he left the dining hall. According to Cowles, Truesdell also grabbed his genitals and buttocks during the pat-down search. (ECF No. 52 at 68.)

According to Truesdell, on July 17, 2019, he was outside the culinary building checking departing inmates for oranges. During one of these pat-downs, he instructed an inmate, later identified as Plaintiff, to turn around for the pat-down. He acknowledges that Plaintiff accused him of touching his penis, and he apologized.

Truesdell filed the NOC for Plaintiff having an orange. Truesdell's report in support of the NOC states that he asked Plaintiff if there was an orange in his front pocket and he said,

"ya," and so Truesdell asked him to remove it. Truesdell started checking Plaintiff's right front

pocket again and Plaintiff said, "I don't have anything else, you already touched my dick."

Truesdell responded, "oh, sorry." Plaintiff then returned to his unit. (ECF No. 57-5 at 6; ECF No.

52 at 57.) Truesdell acknowledges that the video footage was reviewed, and the charge was

dismissed. (ECF No. 57-5 at 2.) Truesdell notes that the IG investigation found Plaintiff's

allegations were unsubstantiated, and Truesdell denies touching Plaintiff's penis. (ECF No. 57-9

at 5-6.)

In response to Plaintiff's argument that Caseworker Ball said she cringed when she

watched the video, Truesdell provides a declaration from Ball where she states she said she was

sorry Plaintiff had to go through "this," referring to the disciplinary hearing. Ball claims that the

video shows that Truesdell did not sexually assault Plaintiff. (ECF No. 57-13.)

**C. Eighth Amendment Sexual Abuse**

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions."

*Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012). "Sexual harassment or abuse of an

inmate by a corrections officer is a violation of the Eighth Amendment." *Id.* at 1046 (citing

*Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). In evaluating a prisoner's claim,

courts consider whether "the officials act[ed] with a sufficiently culpable state of mind" and if

the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.

*Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Where there is no legitimate penological purpose for a prison official's conduct, court's

presume malicious and sadistic intent. *Id.* at 1050. Sexual contact between a prisoner and a

prison guard serves no legitimate role and "is simply not 'part of the penalty that criminal

offenders pay for their offenses against society.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825,

834 (1994)). In sexual contact cases, there is no lasting physical injury requirement because the only requirement is that the officer's actions be offensive to human dignity. *Schwenk*, 204 F.3d at 1196.

Plaintiff maintains that Truesdell's conduct violates the Eighth Amendment. Truesdell, on the other hand, denies that the events occurred as Plaintiff alleges.

There is a genuine dispute of material fact as to whether Truesdell sexually abused Plaintiff. On the one hand, Plaintiff provides his own declaration with his version of events, which is corroborated by his report, his statements given to medical providers and PREA coordinators, his grievances, his statement in the disciplinary proceeding, his interrogatory responses, as well as his cellmate's affidavit.

Truesdell, on the other hand, provides a verified interrogatory response that he did not grab Plaintiff's penis, as well as the IG's finding that the allegations were unsubstantiated.

Finally, the video is not conclusive evidence one way or the other as to whether Truesdell grabbed Plaintiff's penis during the pat down search. However, it does confirm that Plaintiff stopped and had a discussion with Truesdell in the midst of the pat down search.

Truesdell repeatedly argues that the court should disregard Plaintiff's declaration because it is not based on personal knowledge, and it contains legal standards and conclusions, argument, hearsay, accusations and assumptions. The court has not considered the legal standards, arguments, or hearsay contained within Plaintiff's declaration. However, much of Plaintiff's declaration is in fact based on his personal knowledge of how events transpired that day, and that is perfectly acceptable evidence for the court's consideration.

For these reasons, both Plaintiff's and Defendant's motions for summary judgment should be denied as to the Eighth Amendment sexual abuse claim.

**D. Retaliation**

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

Plaintiff argues that Truesdell made false allegations that Plaintiff took an orange out of the dining hall in the NOC in response to Plaintiff confronting him and reporting him for sexual abuse.

Truesdell argues there is no evidence of retaliation. Truesdell contends that Plaintiff admits he only presumed the NOC was retaliatory, and Plaintiff did not inform Truesdell he was filing a grievance or reporting the incident via the PREA hotline. Truesdell further asserts that Plaintiff admits his right to grieve was not chilled.

There are also genuine disputes as to material facts regarding whether Truesdell retaliated against Plaintiff. There is no dispute that Truesdell took adverse action against Plaintiff when he filed the NOC against Plaintiff. The question is whether he took this action because of Plaintiff's protected conduct. Truesdell argues that Plaintiff admits he did not tell Truesdell he was filing a

complaint, but at the same time, shortly after the alleged incident, Plaintiff confronted Truesdell and asked for his name. This is circumstantial evidence of retaliatory motive that, when taken in the light most favorable to Plaintiff, presents a genuine dispute of material fact as to Truesdell's intent. *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation omitted). (ECF No. 57-15. This is because circumstantial evidence can include proximity in time between the proximity in time between the protected conduct and the alleged retaliation. *Id*. Here, the alleged sexual abuse, Plaintiff's confrontation of Truesdell to find out his name, and the writing of the NOC took place within close proximity such that a reasonable fact finder could determine Truesdell wrote the NOC in retaliation for Plaintiff complaining about Truesdell. This is a reasonable determination particularly where the charges about the orange by Truesdell did in fact turn out to be false. A fact finder could likewise determine that Truesdell did not have a retaliatory motive in filing the NOC given that Plaintiff had only asked him for his name, and Truesdell did not advise he was going to file a complaint or grievance.

Truesdell also argues that Plaintiff admits he was not chilled from participating in the grievance process. However, "an objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather than the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim,* 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 569).

For these reasons, Plaintiff's and Truesdell's motions should be denied as to the retaliation claim that Truesdell retaliated against Plaintiff by filing a false NOC because Plaintiff complained about the sexual abuse incident.

**E. Qualified Immunity**

Finally, Truesdell argues he is entitled to qualified immunity. He argues that the constitutional rights at issue where not clearly established and he complied with all regulations and policies and procedures.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

Truesdell's qualified immunity argument is conclusory, and in any event, the court has determined that a fact finder could conclude that Truesdell violated Plaintiff's rights. Both the right to be free from sexual abuse and the right to be free from retaliation were clearly established at the time this incident occurred. Therefore, Truesdell is not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for summary judgment (ECF No. 53), and **GRANTING** Truesdell's motion for summary judgment (ECF No. 57) only as to the retaliation claim asserting that Truesdell engaged in a campaign of harassment and stalking, but **DENYING** Truesdell's motion for summary judgment as to the Eighth Amendment sexual abuse claim and the remaining retaliation claim that Truesdell filed a false NOC against Plaintiff for complaining of sexual abuse.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 4, 2022

_____
Craig S. Denney
United States Magistrate Judge